UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| PEOPLE FOR THE ETHICAL TREATMENT OF ANIMALS, INC., | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 11-555 (ESH) |
| BUREAU OF INDIAN AFFAIRS, | ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM OPINION**

Plaintiff People for the Ethical Treatment of Animals, Inc. ("PETA"), a Virginia nonprofit corporation, has sued the Bureau of Indian Affairs ("BIA"). Plaintiff brings this suit under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq.*, claiming that defendant failed to conduct a reasonable search in response to two FOIA requests made by plaintiff, and as a result, failed to produce the requested documents until after litigation commenced. Before the Court are defendant's motion for summary judgment and plaintiff's cross motion for summary judgment. For the reasons set forth below, the Court will grant defendant's motion and deny plaintiff's motion.

**BACKGROUND**

**I.  FACTUAL HISTORY**

Plaintiff submitted two FOIA requests. The first request ("the August request") was submitted on August 2, 2010, and sought information regarding three leases entered into by the Eastern Band of Cherokee Indians ("EBCI"): Santa's Land; the Cherokee Bear Zoo and/or Barry Coggins; and Chief Saunooke Bear Park and/or Chief Saunooke Trading Post and/or Cole

Klapsaddle (collectively, "the Bear leases"). (Complaint ["Compl."] at ¶ 10; Defendant's Memorandum of Law in Support of Motion for Summary Judgment ["Def.'s Mot."] at 2.) Plaintiff limited the scope of the August request to documents dated from January 1, 2003, to the date of the request, August 2, 2010. (Compl. at ¶ 10.) Defendant assigned the August request FOIA Control No. BIA-2010-01249. (*Id.* at ¶ 11.)

Defendant houses the Bear leases in hard-copy form only, located in a file cabinet at the BIA's Cherokee Agency office in Cherokee, North Carolina. (Def.'s Mot., Declaration of Franklin Keel ["Keel Decl."] at ¶ 5; Defendant's Memorandum of Points and Authorities in Support of Supplement to Motion for Summary Judgment, Reply and Opposition to Plaintiff's Cross Motion for Summary Judgment ["Def.'s Supp."] at 2; Def.'s Supp., Declaration of Ruth McCoy ["McCoy Decl."] at ¶¶ 1, 2.) In that office, Ruth McCoy serves as a Realty Officer and supervises Gail Kuester, a Realty Specialist who maintains BIA's lease files pertaining to EBCI lands. (Def.'s Supp., Declaration of Gail Kuester ["Kuester Decl."] at ¶¶ 1, 2, p. 4; McCoy Decl. at ¶ 1.) Kuester was assigned to the August request, and searched "a spreadsheet of [EBCI] leases on the Cherokee Agency share drive," which "does not contain copies of documents" but "contains information showing the lease number, lessor, and lessee." (Kuester Decl. at ¶¶ 3, 4.) Kuester used the information to collect data on the Bear leases and then manually searched the hard copy files in the file cabinet. (*Id.* at ¶ 4.) Pursuant to the August request, on September 23, 2010, defendant produced seven documents totaling 273 pages: three memoranda, one letter, one lease, and two lease supplements. (Compl. at ¶ 12, Ex. 2; Reply in Support of Defendant's Supplement to Motion for Summary Judgment ["Def.'s Rep."], Second Supplemental Declaration of John Harrington ["Second Harrington Decl."] at ¶ 3.)

Plaintiff submitted a second FOIA request ("the October request") on October 12, 2010, seeking the same documents as the August request, but plaintiff removed the date restriction for the search. (*Id.* at ¶ 14.) Defendant assigned the October request FOIA Control No. BIA-2011-00035. (*Id.* at ¶ 15, 16, Ex. 5.) In response to the October request, Kuester again conducted a manual search of the files, finding no additional responsive documents that had not already been provided to plaintiff as a result of the August request. (*Id.*; Kuester Decl. at ¶ 4.)

On December 2, 2010, plaintiff filed an administrative appeal, asserting that defendant's search was unreasonable and inadequate. (Compl. at ¶ 20, Ex. 5.) On January 14, 2011, defendant informed plaintiff that it would have a decision on the appeal in one or two weeks. (*Id.* at ¶ 23.) The record does not reflect that defendant took any further steps to resolve the appeal.

Plaintiff filed the instant complaint on March 17, 2011. (Compl. at 1.) John Harrington, BIA counsel, spoke to plaintiff's counsel on April 13, 2011, seeking clarification of the types of documents plaintiff requested. (Def.'s Mot. at 2.) Plaintiff's counsel informed Harrington that a number of responsive documents could be eliminated from the search, but that plaintiff wanted any documents related to the exhibition of animals, the enforcement of laws and regulations, and contractual obligations showing that lessees were complying with laws and regulations. (*Id.* at 2-3.) During this phone call, Harrington admitted that defendant's search and production up to that point had been inadequate. (Pl.'s Rep. at 4; Def.'s Rep. at 8.)

In March 2011, Rebecca Smith, a Program Support Assistant at the BIA's Branch of Tribal Government, Eastern Region, in Nashville, Tennessee, requested that BIA employees at the Cherokee Agency send her copies of the entire files of each of the Bear leases. (Def.'s Supp., Declaration of Rebecca J. Smith ["Smith Decl."] at ¶¶ 1, 4.) She received those files on March

25, 2011, and then sent them electronically to Harrington.  (*Id.* at ¶ 4.)  Subsequent to several conversations between Harrington and Smith outlining responsive and exempt documents, on April 22, 2011, defendant produced an additional thirty-eight documents, totaling approximately 420 pages, that were responsive to the August and October requests.  (Def.'s Mot. at 3; Plaintiff's Consolidated Memorandum of Points and Authorities in Support of Plaintiff's Cross-Motion for Summary Judgment and in Opposition to Defendant's Motion for Summary Judgment ["Pl.'s Cross Mot."] at 9; Smith Decl. at ¶ 5; Second Harrington Decl. at ¶ 4.)  Only one of those documents, totaling six pages, was responsive to the August request but not produced in the September 2010 disclosure (Second Harrington Decl. at ¶ 5); thus, the vast majority (thirty-seven out of thirty-eight documents) were responsive to the October request, which had no restrictions as to dates.  Twelve of the documents contained minor redactions of private addresses or private financial information.  (Keel Decl. at ¶ 11.)

The EBCI completed an electronic database of its reservation lands in May 2011; unlike the Cherokee Agency's spreadsheet that contains references to files that exist in hard-copy form only, the EBCI database houses all of EBCI's lease documents in a searchable, electronic format.  (Def.'s Supp. at 2, 3.)  The database is the sole property of the EBCI; however, the EBCI granted access to defendant upon the database's completion.  Kuester searched the database in May 2011, after the Eastern Region in Nashville had reviewed the entire set of BIA files and produced every responsive document in those files.  (*Id.*)  Kuester used search terms that included the lease numbers, the lessors' and lessees' names, and the words "Santa's Land," "Cherokee Bear Zoo," and "Chief Saunooke's Trading Post."  (Kuester Decl. at ¶¶ 5, 6, 7, p. 4.)  She found 479 pages of responsive documents but discovered that those documents were the same ones that had

already been produced by the Eastern Region office in the April 2011 disclosure. (Def.'s Supp. at 2, 3.)

## ANALYSIS

### I. STANDARD OF REVIEW

The Court may grant a motion for summary judgment if the pleadings, the discovery and disclosure materials on file, and any affidavits show "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c). The moving party bears the burden of demonstrating an absence of a genuine issue of material fact in dispute. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Factual assertions in the moving party's affidavits may be accepted as true unless the opposing party submits his own affidavits, declarations, or documentary evidence to the contrary. *Neal v. Kelly*, 963 F.2d 453, 456-57 (D.C. Cir. 1992).

"FOIA cases typically and appropriately are decided on motions for summary judgment." *Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009) (citations omitted). "In a FOIA case, summary judgment may be granted to the government if 'the agency proves that it has fully discharged its obligations under the FOIA, after the underlying facts and the inferences to be drawn from them are construed in the light most favorable to the FOIA requester.'" *Fischer v. U.S. Dep't of Justice*, 596 F. Supp. 2d 34, 42 (D.D.C. 2009) (quoting *Greenberg v. U.S. Dep't of Treasury*, 10 F. Supp. 2d 3, 11 (D.D.C. 1998)).

"An agency fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'" *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999) (quoting *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990)); *see also Steinberg v. U.S. Dep't of Justice*, 23 F.3d 548, 551 (D.C. Cir. 1994). "[T]he issue to be resolved is not whether there might exist any other

5

documents possibly responsive to the request, but rather whether the search for those documents was adequate." *Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984). "The adequacy of the search, in turn, is judged by a standard of reasonableness and depends, not surprisingly, upon the facts of each case." *Id.* Detailed descriptions of "what records were searched, by whom, and through what process" satisfy this standard of reasonableness. *See Steinberg*, 23 F.3d at 551-52. To meet its burden, the agency may submit affidavits or declarations that explain in reasonable detail the scope and method of the agency's search. *Perry v. Block*, 684 F.2d 121, 126 (D.C. Cir. 1982). In the absence of contrary evidence, such affidavits or declarations are sufficient to demonstrate an agency's compliance with FOIA. *Id.* at 127. However, if the record "leaves substantial doubt as to the sufficiency of the search, summary judgment for the agency is not proper." *Truitt*, 897 F.2d at 542.

## II. THE FOIA REQUESTS

The only issue on appeal is the adequacy of defendant's search, since plaintiff does not contest the exemptions invoked by defendant, and while the legal conclusions are disputed, the underlying facts are not. (*See infra* note 7.) Plaintiff argues that it is entitled to summary judgment because the pre-litigation searches were inadequate. (*See* Pl.'s Cross Mot. at 9-17; Pl.'s Rep. at 4-15.) Plaintiff bases its argument on the fact that it did not get the documents it requested until after litigation commenced; thus, plaintiff reasons, the post-litigation search and the results thereof proves the inadequacy and bad faith of defendant's pre-litigation search. [1]

---

[1] Plaintiff, in fact, concedes that the post-litigation search was adequate. As noted by plaintiff, "Defendant makes much of the fact that Plaintiff has not addressed . . . the reasonableness of Defendant's post-litigation search . . . [but] Plaintiff never challenged . . . the alleged reasonableness of Defendant's post-litigation search." (Pl.'s Rep. at 1.)

Given the record before the Court,[2] it cannot agree with the premise of this argument or the legal conclusions.

First, plaintiff has failed to prove that defendant's first search, in response to the August request, was inadequate. As defendant's declarations show, and plaintiff does not appear to contest, the first search, limited in time by plaintiff, found all but one responsive document that was six pages long. (Second Harrington Decl. at ¶ 5.) The existence of this single document, however, is immaterial to the adequacy of defendant's search in response to the August request because "the issue to be resolved is not whether there might exist any other documents possibly

---

[2] The record includes the Second Supplement Declaration of John Harrington, which clarified the extent of the agency's production in April 2011. As is clear from this declaration, the first search only failed to locate six pages of documents, and the expanded scope of the production thereafter was primarily attributable to the fact that the timeframe of plaintiff's second request was greatly increased.

While the Court does not condone the late filing of this declaration, it will not, as requested by plaintiff, strike the pleading. To the extent that the legal arguments are redundant and unnecessary, they have been ignored, but the clarification of facts regarding the adequacy of the search cannot be disregarded given the nature of plaintiff's challenges. Moreover, in a FOIA case, even if defendant had failed in obtaining summary judgment because of an inadequate search, it does not necessarily follow that plaintiff prevails. Rather, the usual remedy is for the Court to remand to the agency to expand its search or to provide more detailed declarations regarding the scope of the search. *See, e.g.*, *Kean v. NASA*, 480 F. Supp. 2d 150, 159-60 (D.D.C. 2007) (ordering NASA to coordinate with plaintiff on a plan to properly search and document its search procedures).

For instance, courts often deny an agency's motion for summary judgment based upon vague or conclusory declarations and ask the agency to submit more detailed declarations. *E.g.*, *Schoenman v. FBI*, No. 04-2202, 2009 WL 763065, at *10 (D.D.C. Mar. 19, 2009); *see also Morley v. CIA*, 508 F.3d 1108, 1121 (D.C. Cir. 2007) (commanding the district court that "[o]n remand the CIA must supplement its explanation"). In other cases, courts ask the agency to conduct a more adequate search. *E.g.*, *Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 37 (D.C. Cir. 1998) (remanding to the district court so it could order the agency to conduct a more adequate search).

As the Court has shown, those cases where an agency's motion for summary judgment was denied based on inadequate declarations are distinguishable from the case here because, in those cases, the agency provided vague and conclusory declarations. (*See infra* note 5.) That is not the case here, but nonetheless, the explanation of the quantification of page and document numbers in the second declaration has allowed the Court to avoid an unnecessary remand and better enabled the Court to address some of plaintiff's arguments.

responsive to the request, but rather whether the search for those documents was adequate." *Weisberg*, 745 F.2d at 1485. Regarding the August request, defendant has fulfilled its burden to provide detailed descriptions of "what records were searched, by whom, and through what process." *See Steinberg*, 23 F.3d at 551-52. As defendant's declarations show, the responsive files are housed in a single file cabinet in hard-copy form only at the Cherokee Agency in North Carolina. Gail Kuester used an Agency spreadsheet to search for responsive files, and then she went to the files and manually searched them. Those details are clearly sufficient to show "who" searched "what records" "through what process." *Id.*

Plaintiff's argument, then, is essentially that defendant's search in response to the October request, where there were no date restrictions, was inadequate and in bad faith because that search inexplicably missed thirty-seven documents totaling over 400 pages that were later produced by defendant after litigation had commenced. Even if the October search had been inadequate, it is well settled in this Circuit that the subsequent production of responsive documents can remedy inadequate searches.[3] Further, that subsequent production cannot serve as proof that the agency conducted an unreasonable search initially or acted in bad faith, for such a rule would punish those agencies that attempted to correct past inadequate searches:

> In *Military Audit Project v. Casey*, we "emphatically reject[ed]" the notion that an agency's disclosure of documents it had previously withheld renders its affidavits suspect, and our reasoning in that case is applicable here as well. We observed that such a line of argument, if accepted, "would work mischief in the

---

[3] Plaintiff's repeated emphasis that the pre-litigation searches are the only searches material to the adequacy determination is also legally unsupportable. (*See* Pl.'s Cross Mot. at 15 (arguing that defendant "failed to identify . . . responsive documents . . . until after Plaintiff initiated litigation"); Pl.'s Rep. at 1, 5 ("Defendant in this case falls far short of meeting its burden of proving the reasonableness of the searches it allegedly conducted before litigation commenced.").) The cases cited by plaintiff in support of this proposition, *McKinley v. FDIC*, 756 F. Supp. 2d 105 (D.D.C. 2010), and *Cuban v. SEC*, 744 F. Supp. 2d 60 (D.D.C. 2010), do not make any substantive distinction between pre- and post-litigation searches.

> future by creating a disincentive for an agency to reappraise its position, and when appropriate, release documents previously withheld." Were the court to thus "punish flexibility," it would "provide the motivation for intransigence"; the argument in favor of doing so is "based on the perverse theory that a forthcoming agency is less to be trusted in its allegations than an unyielding agency." It would be unreasonable to expect even the most exhaustive search to uncover every responsive file; what is expected of a law-abiding agency is that it admit and correct error when error is revealed.

*Meeropol v. Meese*, 790 F.2d 942, 953 (D.C. Cir. 1986) (quoting *Military Audit Project v. Casey*, 656 F.2d 724, 754 (D.C. Cir. 1981)) (citations omitted) (brackets in original); *see also Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 772 (D.C. Cir. 1981) ("Indeed, if the release of previously withheld materials were held to constitute evidence of present 'bad faith,' similar evidence would exist in every FOIA case involving additional releases of documents after the filing of suit.").

*Meeropol* dealt with a massive FOIA request[4] made by the sons of Julius and Ethel Rosenberg, the American couple who were executed in 1953 for espionage. 790 F.2d at 945. After making their FOIA request on February 20, 1975, the plaintiffs filed a complaint in federal district court on July 14, 1975, alleging that several government agencies were withholding responsive documents. *Id.* at 945-46. "In the ensuing ten years [following the initiation of litigation,] the defendant agencies, under court order, retrieved approximately 500,000 pages of records and released approximately 200,000 of those pages" to the plaintiffs. *Id.* at 946.

At issue in *Meeropol* was the FBI's handling of various FOIA requests. The sons challenged the adequacy of the FBI's search that resulted in an allegedly incomplete production

---

[4] Plaintiffs sought "'all of the records relating directly or indirectly to investigation and prosecution of our parents,'" which at the time "was perhaps the most extensive FOIA request ever made." *Meeropol*, 790 F.2d at 945 (quoting *Letter from Michael and Robert Meeropol to the Office of the Deputy Attorney General* (Feb. 20, 1975)).

9

of documents. *Id.* at 952-53. Despite the admission of all involved that "the searches conducted by the FBI between the years 1975 and 1978 were . . . 'inadequate,'" the Court found that the FBI had subsequently remedied the problem by conducting an adequate search despite the requestors' argument that "references to [unproduced, responsive] files in [produced] documents" proved that the FBI was still withholding responsive files. *Id.* at 950, 963. The Court found that the FBI's subsequent production of relevant documents within the files referenced by already produced documents, *inter alia*, was sufficient to show that the FBI conducted a good faith, adequate search. *Id.* at 953-54.

Noticeably absent from the Court's analysis in *Meeropol* is any support for the proposition that pre-litigation and post-litigation searches should be weighed differently or that the post-litigation searches and production should be ignored in determining whether the government has conducted an adequate search. *See id.* at 950-54. In fact, the Court confirmed the adequacy of the FBI's search *despite* the fact that the adequate search came several years after the initiation of litigation. *See id.* at 945-46, 953-54, 963.

Similar to the FBI in *Meeropol*, the BIA remedied whatever inadequacies might have existed in response to the October request by subsequently searching *every single document* in *every single file* that could have contained responsive documents, ultimately producing thirty-seven more documents totaling over 400 pages in April 2011. Plaintiff concedes that this post-litigation search was adequate (*see supra* note 1), but still it contends that the post-litigation search proves the inadequacy of the pre-litigation search. As noted, plaintiff's attempt to render defendant's post-litigation efforts as immaterial (or as proof of bad faith) is contrary to the law in this Circuit, which recognizes that it is immaterial that the search occurred after litigation commenced. *See Meeropol*, 790 F.2d at 953.

Plaintiff's contention that defendant's post-litigation search and April 2011 production are proof of bad faith is also misguided.[5] (*See* Pl.'s Cross Mot. at 16.) Absent evidence to the contrary, the Court must presume good faith on the part of the agency and its declarants. *Ground Saucer Watch*, 692 F.2d at 771. Because plaintiff relies solely on an argument that cannot be used to prove bad faith (*i.e.*, that subsequent production proves earlier bad faith), *see Meeropol*, 790 F.2d at 953, plaintiff has not provided any evidence to overcome the presumption of good faith.[6] Defendant's May 2011 search of the EBCI's electronic database further undercuts

---

[5] Plaintiff's use of *Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 28-29 (D.C. Cir. 1998), to support this proposition is misplaced. (*See* Pl.'s Cross Mot. at 16.) In *Campbell*, the Court found an FBI search inadequate because its scope was too narrow; the FBI had evidence that *other databases* contained responsive documents but refused to search them. *Campbell*, 164 F.3d at 68. Here, the BIA searched every single responsive file in the only location that contained responsive files (*i.e.*, the entire lease files for all three Bear leases), producing all responsive documents. (Def.'s Mot. at 3; Smith Decl. at ¶¶ 1, 4, 5.) Thus, unlike *Campbell*, plaintiff has not pointed to any other filing systems with potentially responsive documents that should have been searched.

Likewise, plaintiff's other cases are easily distinguished. *Valencia-Lucena v. U.S. Coast Guard* is similar to *Campbell*; the agency's search was inadequate because it refused to search a known location with responsive documents. 180 F.3d at 326-37. *Founding Church of Scientology of Wash., D.C., Inc. v. NSA*, 610 F.2d 824 (D.C. Cir. 1979), hinges on the inadequacy of the agency's single, undetailed declaration. *Id.* at 837. *Defenders of Wildlife v. U.S. Dep't of Interior* undermines plaintiff's assertion because the agency's search was found adequate even though a reference in another document suggested that additional responsive documents might exist. 314 F. Supp. 2d at 10. *Kean v. NASA* relates to the inadequacy and lack of detail in the agency's declarations. 480 F. Supp. 2d at 157. Finally, in *Friends of Blackwater v. U.S. Dep't of the Interior*, 391 F. Supp. 2d 115 (D.D.C. 2005), this Court held a Fish and Wildlife Service ("FWS") search inadequate when production from other agencies produced documents created by FWS that the FWS itself failed to produce in response to the FOIA request. *Id.* at 120-21. None of those circumstances is present here.

[6] Likewise, despite its exhaustive efforts to undermine defendant's declarants, plaintiff has failed to provide any evidence to overcome the presumption of good faith. (Pl.'s Rep. at 9-10, 12-15.) As the Circuit reasoned in *Perry v. Block*,

> [None of the existing precedent] demands in every FOIA case that the affidavits of the responding agency set forth with meticulous documentation the details of an epic search for the requested records. Rather, *in the absence of countervailing evidence or apparent inconsistency of proof*, affidavits that explain in

plaintiff's contention that defendant acted in bad faith. Even though defendant conducted a detailed search of every responsive file, and albeit belatedly, produced every responsive document in those files, defendant went further and searched a database that was not government property to be sure that it had uncovered all relevant files. Indeed, the Court notes that this might go above and beyond what is required of an agency under FOIA, because the search "need not be perfect" and "[i]t would be unreasonable to expect even the most exhaustive search to uncover every responsive file." *Meeropol*, 790 F.2d at 953, 956. At any rate, it certainly undercuts any argument of bad faith.

In response, plaintiff points to *Nkihtaqmikon v. Bureau of Indian Affairs*, 672 F. Supp. 2d 154 (D. Me. 2009), to argue that the BIA has a track record of failing to properly respond to FOIA requests. (Pl.'s Rep. at 6.) Although the Court is troubled by BIA's lack of effort to adjudicate PETA's administrative appeal before the commencement of litigation, neither what happened in *Nkihtaqmikon* nor BIA's apparently dilatory response to the administrative appeal is relevant to the legal issues in this case. In addition to this Court's finding that BIA fulfilled its duty to conduct an adequate search, *Nkihtaqmikon* is easily distinguishable. First, the Maine

---

reasonable detail the scope and method of the search conducted by the agency will suffice to demonstrate compliance with the obligations imposed by the FOIA.

684 F.2d at 127 (emphasis added). Indeed, the presumption of good faith is bolstered by the fact that each of the declarants whom plaintiff attacks possesses direct, personal knowledge of the searches. Franklin Keel is the Regional Director of the Eastern Region of the BIA in Nashville, Tennessee, and his official duties include management over the Cherokee Agency office where the files of the Bear leases are housed, as well as, the region's FOIA manager, Rebecca Smith. (Keel Decl. at ¶¶ 1, 2.) Gail Kuester, the individual who actually conducted the manual searches in response to the August and October requests, describes in detail how she conducted those searches, from using the spreadsheet to her manual search of the hard-copy files. (Kuester Decl. at ¶ 4.) Ruth McCoy is a BIA Realty Officer in the very office that houses the lease documents and is Gail Kuester's supervisor. (McCoy Decl. at ¶ 1; Kuester Decl. at 4.) Finally, having read these documents, the Court cannot agree with plaintiff's characterization of these declarations as "conclusory."

court ultimately found that the BIA's search was inadequate because it was not reasonably calculated to uncover all relevant documents; in fact, the BIA had conducted a series of inadequate electronic searches over a four-year period that led to "dribbling disclosure," never attempting to comprehensively correct its past inadequate disclosure. 672 F. Supp. 2d at 168-70. Second, BIA *did not file responsive pleadings* in that case, offering no reason why it had taken so long to disclose responsive documents or why its search was reasonable. *Id.* at 169. In this case, BIA's disclosure was not "dribbling"; on the contrary, defendant's agents reviewed the *entire* files for the three Bear leases requested by plaintiff and produced everything in those files in April 2011. In addition, BIA has fulfilled its obligation to describe its searches, filing three pleadings and several declarations of agency employees that explain in detail how the searches were conducted, and arguing why those searches were reasonable. The fact that the agency has been unable to explain why its second search was not fruitful does not detract from the Court's conclusions nor does it permit the argument that defendant has engaged in a pattern or practice of not conducting adequate searches. *See Payne Enters., Inc. v. U.S.*, 837 F.2d 486, 491 (D.C. Cir. 1988) ("So long as an agency's refusal to supply information evidences a policy or practice of delayed disclosure or some other failure to abide by the terms of the FOIA, *and not merely isolated mistakes by agency officials*, a party's challenge to the policy or practice cannot be mooted by the release of the specific documents that prompted the suit." (footnote omitted) (emphasis added)).

Finally, plaintiff contends that defendant's reply to its cross motion did not controvert the Statement of Facts included with the cross motion, and thereby violated Local Civil Rule 7(h)(1), thus entitling it to summary judgment. (Pl.'s Rep. at 2.) Assuming that plaintiff's arguments regarding LCvR 7(h)(1) are correct, the Court would have to treat each of plaintiff's

uncontroverted facts as true; however, each "fact" is either immaterial to the adjudication of this case or constitutes a conclusion of law.[7]

## CONCLUSION

For the above reasons, defendant's motion for summary judgment is granted, and plaintiff's cross motion for summary judgment is denied. Further, plaintiff's motion to strike defendant's July 18, 2011 pleading is denied. A separate order accompanies this Memorandum Opinion.

/s/
ELLEN SEGAL HUVELLE
United States District Judge

Date: August 3, 2011

---

[7] As shown by the analysis above, plaintiff's conceded "facts" that defendant failed to produce all responsive documents and that the search was untimely (*i.e.*, it occurred after litigation commenced) are immaterial. (*See* Pl.'s Rep. at 2.) Further, concessions that include phrases like "was inadequate as a matter of law" (*see id.* at 3-4), are not "facts" that the Court need consider. Finally, plaintiff's contention that John Harrington, BIA counsel, conceded the inadequacy of the search in a telephone call is immaterial both because it is a conclusion of law and because the alleged concession occurred before the April 2011 production.